**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X

ANTOINE L. TAYLOR,

                          Plaintiff,

      -against-

CORRECTIONAL OFFICER MICHAEL WILDE

                         Defendant.
-------------------------------------------------------------------X

**REPORT AND**
**RECOMMENDATION**

2:11-cv-3608 (JS) (ST)

**TISCIONE, United States Magistrate Judge:**

## INTRODUCTION

      This case arises out of an incident that occurred on the night of July 2, 2010 in the Nassau County Correctional Center.  Plaintiff Antoine Taylor, an inmate at the NCCC at the time, alleges that excessive force was used against him by correctional officer Michael Wilde, Defendant, in violation of his Eighth Amendment rights.  Defendant has moved for summary judgment on his claims.  For the reasons below, I recommend Defendant's motion be DENIED.

## BACKGROUND

      On the night of July 2, 2010, Plaintiff Antoine Taylor, an inmate at NCCC, was being transferred from the Nassau University Medical Center, where he had undergone surgery, to a wing of the NCCC which contained the NCCC's Medical Unit. Pl. Nar., 1-2, ECF No. 98-3; Pl. Am. Compl., 2-3, ECF No. 81; Def. R. 56.1 Br.. ¶ 3, ECF No. 96.  Defendant accompanied Plaintiff during the trip from the NUMC to the Medical Unit. *Id.*  Plaintiff was transported in leg shackles and handcuffs. Pl. Nar., 2; Pl. Am. Compl., 3; Def. R. 56.1 Br. ¶ 4.

      While in the Medical Unit, something happened between Plaintiff and Defendant.  Both present very different facts about what happened, which I will summarize below.

Plaintiff claims that he was transported first to the "holding pens area," an area where Plaintiff alleges the shackles and handcuffs of prisoners are customarily removed. Pl. Nar., 2-3. Plaintiff claims he asked Defendant to remove his shackles and handcuffs because he was in a lot of pain and that Defendant ignored his request or told him, "No.." *Id.* at 2-3; Pl. Am. Compl. 2-3. He claims was taken into the Medical Unit with shackles and handcuffs on, and says he continued to complain about them because he was in a lot of pain. Pl. Am. Compl., 3.

Plaintiff claims Defendant told him to "shut up" or he would be placed in the "medical pens," a holding area for inmates awaiting medical treatment. Pl. Nar., 3; Pl. Am. Compl., 3; Wilde Aff. ¶ 9, ECF No. 98-7. Plaintiff claims he responded by saying, "Just like a heartless piece of shxx [*sic.*] with no compassion." Pl. Nar., 3. The Defendant then told him to head to the medical pens. *Id.;* Pl. Am. Compl., 3. Plaintiff protested at which point, he claims, the incident occurred. He says the incident was witnessed by two other officers and one other inmate, none of whom Plaintiff has submitted an affidavit from. *Id.*

Plaintiff claims Defendant tried to grab him from behind but was unsuccessful because Plaintiff was holding onto a crease in the wall by the door. *Id.* Plaintiff claims Defendant then picked him up and slammed him into a vacant office, where Plaintiff's head hit a desk and then the floor. *Id.* In the scuffle, Plaintiff claims his finger was cut and began bleeding. *Id.* He also claims the incident caused one of the staples, put in his stomach as part of his recent surgery, to pop out, causing additional bleeding. *Id*; Pl. Nar., 3.

Defendant presents a very different version of events. Defendant claims that before entering the Medical Unit he did remove the leg shackles from Plaintiff and told him the handcuffs would be removed once they arrived in the Medical Unit. Def. R. 56.1 Br, ¶ 1. After arriving in the Medical Unit, Defendant claims Plaintiff loudly said, "Get these cuffs off me," to

which Defendant responded, "I told you I would take them off when we got here." *Id.* at ¶¶ 5-6. Defendant claims Plaintiff then responded, "Get these off off of me, I don't have to wear these in here, you should have taken these off in the pens." *Id.* at ¶ 6.  The Defendant says he then told Plaintiff he needed to calm down or he would be taken to the medical pens for administrative confinement. *Id.* at ¶ 8.  Defendant says Plaintiff continued to raise his voice and hands, demanding the handcuffs be taken off and telling Defendant he would not go anywhere until they were removed. *Id.* at ¶ 10.  At that point, Defendant told Plaintiff to go to the medical pens to which Plaintiff allegedly responded, "Fuck you, I ain't going nowhere. You may think you're taking me somewhere but I ain't going." *Id.* at ¶¶ 11-12.  Officer Wilde says he then attempted to place his right hand on Plaintiff's left elbow to direct him to begin moving, at which point Plaintiff jerked his arms away, and yelled, "You can't touch me. Look he's assaulting me." *Id.* at ¶ 13.  Defendant then claims he placed his hand on Plaintiff's elbow again, and Plaintiff began walking towards the medical pens. *Id.*

As they passed an empty room, Defendant claims Plaintiff again jerked away from him. *Id.* at ¶ 14.  When he tried to grab Plaintiff by the arm, Defendant allegedly stumbled, his legs got caught up with Plaintiff's, and this resulted in both falling to the ground. *Id.* at ¶ 15. After the fall, Plaintiff allegedly began yelling, "Assault! Assault! You all see that, he assaulted me!" *Id.* at ¶ 16.

Defendant has submitted the affidavit of another corrections officer who witnessed the incident, Gary Licht. *See* Licht Aff., ECF No. 98-8.  Mr. Licht swore that he witnessed Plaintiff jerk away from Defendant, Defendant's feet get entangled with Plaintiff's causing them both to fall to the floor, and Defendant help Plaintiff up afterwards. Licht Aff. ¶¶ 6-8.  Licht says that at

no time did he witness Defendant pick Plaintiff up, slam him into an empty office, or use any force on Plaintiff. *Id.* at ¶¶ 12-13, 16.

After this incident, Plaintiff was examined by a Nurse Practitioner, who wrote up an examination report.  In the report, she wrote, "Claims he was slammed by an officer and injured his r[ight] hand, lower back, and back of head. Good ROM [range of motion] in all extremities. Has old foreign body [in] dorsal r[ight] small finger, middle finger, and middle phalanx with piece of glass. X-ray [negative for] swelling [of] r[ight] hand. Has open wound on lower back from bullet removal. Wound dry [and] healing. [Negative for] lump on back of head where [patient] claims injury. PERLA [Pupils equal and reactive to light and accommodation]. Denies L.O.C. [loss of consciousness]. Treatment: Give meds as per hospital discharge. Prognosis: Fair." Medical Rep., ECF No. 98-4.  Below her description is a section which asks, "Are the injuries observed consistent with the inmate's description?"  Next to that, the examining N.P. checked the "Yes" box. *Id.*  Plaintiff alleges that the N.P. committed "medical negligence and malpractice" for not having "the prior injuries examined." Pl. Br., ¶ 10, ECF No. 116.

Plaintiff claims he reported the incident to a Sgt. Lettman who he says, instead of taking action to investigate the incident, informed the Defendant he should file a false misbehavior report claiming Plaintiff disobeyed a direct order. Pl. Am. Compl., 3.  Defendant did file a "Disciplinary Report Form" in which he alleges "no force was used." White Aff., Ex. E, ECF No. 96.  That form shows Plaintiff pleaded not guilty to infractions of Rules 24 and 59 but was found guilty of both because "Inmate's actions…could have led to injuries to one or both [of Plaintiff and Defendant]." *Id.*  Plaintiff allegedly signed the notice, acknowledging that he had been advised of the rights afforded to him at the disciplinary hearing. *Id.*  Plaintiff claims he appealed this guilty finding to a Captain Ford, who affirmed. Pl. Am. Compl., 3.

4

Plaintiff also filed an official grievance. *See* Pl. Grievance, ECF No. 98-6.  The grievance coordinator made the decision to send Plaintiff's grievance to Internal Affairs, and Plaintiff allegedly signed that he accepted that decision, though he claims, "the signatures on the grievance form are different than the Plaintiff." *Id.*; Pl. Br., ¶ 14.

Plaintiff brings this claim under 42 U.S.C. § 1983, alleging violations of his Eighth Amendment rights. *See* Pl. Am. Compl., 1.

## LEGAL STANDARD

Summary judgment is appropriate when the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  An issue of fact is material if the fact "might affect the outcome of the suit under the governing law…" *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986).  A genuine dispute exists as to a material fact when "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

On motions for summary judgment, the moving party bears the initial burden of establishing the absence of a material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  Once the moving party meets that burden, the non-moving party must then show there is a genuine dispute for trial. *Id.*  The burdens on both parties as to the underlying elements are aligned as they would be at trial. *Id.* at 254. "Where, as here, the nonmovant bears the burden of proof at trial, 'the movant may show prima facie entitlement to summary judgment' by either (1) 'point[ing] to evidence that negates its opponent's claims' or (2) 'identify[ing] those portions of its opponent's evidence that demonstrate the absence of a genuine issue of material fact.'" *Barlow v. Male Geneva Police Officer,* 434 Fed. Appx. 22, 25 (2d Cir. 2011) (quoting in part *Salahuddin v. Goord,* 467 F.3d 263, 272 (2d Cir. 2006)).

When considering a motion for summary judgment, the Court must construe "all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)). Excessive force claims, such as the one before the Court here, are very factually reliant. As such, the "granting of summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the [defendant's] conduct was objectively unreasonable." *Barlow*, 434 Fed. Appx. at 23-24 (quoting *Amnesty Am. v. Town of W. Hartford,* 361 F.3d 113, 123 (2d Cir. 2004)).

Assessment of a witness's credibility is a function reserved for the jury and is not appropriate on summary judgment. *Scholastic, Inc. v. Harris,* 259 F.3d 73, 87 (2d Cir. 2001). The Second Circuit has recognized an exception to that where the Plaintiff relies "almost exclusively on his own testimony, much of which is contradictory and incomplete." *Jeffreys v. City of N.Y.*, 426 F.3d 549. 554 (2d Cir. 2005). However, "summary judgment cannot be defeated by the presentation by the Plaintiff of but a 'scintilla of evidence' supporting [his] claim…[the] preliminary question for the judge [is] not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'" *Fincher v. Depository Trust & Clearing Corp.,* 604 F.3d 712, 726 (2d Cir. 2010) (quoting in part *Liberty Lobby,* 477 U.S. at 251-252).

Because Plaintiff is proceeding *pro se*, the Court affords "special solicitude" to him when considering a motion for summary judgment. *See Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988). This "special solicitude" includes reading the filings of a *pro se* litigant "liberally"

and interpreting them to "raise the strongest arguments that they suggest." *Minus v. City of New York*, 488 F. Supp. 3d 58, 63 (S.D.N.Y. 2020) (citing *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999)) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

## DISCUSSION

Here, Defendant advances four arguments in support of his motion for summary judgment. I will address each in turn.

### I.   Summary Judgment May Not Be Granted to Defendant As, Should the Jury Credit Plaintiff's Account, the Force Used Was Sufficient to Sustain an Eighth Amendment Claim and Was Not for the Purpose of Maintaining Order

#### a.   Eighth Amendment Claims

The first argument Defendant makes to support his motion for summary judgment is that Plaintiff did not suffer an injury, and therefore, summary judgment should be granted. *See* Def. Br., 3-4. However, extent of injury is not controlling in an Eighth Amendment excessive force claim. The proper inquiry is whether the *force* applied was "nontrivial…and [whether it] 'was applied…maliciously and sadistically to cause harm." *See Wilkins v. Gaddy,* 559 U.S. 34, 39 (2010). While extent of injury may be relevant to the inquiry of whether the force used is nontrivial, it, in and of itself, is not controlling. *Id.*

The claim of excessive force by a corrections officer against a prisoner incarcerated after a conviction derives from a violation of the Eighth Amendment right to be free of "cruel and unusual punishments," applied against the states through the Due Process Clause of the Fourteenth Amendment. U.S. Const. amend. VIII*; Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000).

To successfully litigate such a claim, a Plaintiff must establish the defendant "had the necessary level of culpability, shown by actions characterized by 'wantonness' in light of the

7

particular circumstances surrounding the challenged conduct." *Blyden v. Mancusi,* 186 F.3d 252, 262 (2d Cir. 1999). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Anderson v. Sullivan*, 702 F. Supp. 424, 426 (2d Cir. 1988). The factors to be considered in assessing whether the use of force was violative of a prisoner's constitutional rights are: "the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the purpose of causing harm." *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir. 1973). The Supreme Court has re-enforced that "significant injury" is not "a threshold requirement for stating an excessive force claim." *Wilkins,* 559 U.S. at 37 (quoting *Hudson v. McMillan,* 503 U.S. 1, 7 (1992)). Instead, "the 'core judicial inquiry'…[is] whether force was applied in a good-faith effort to maintain or restore disciple, or maliciously and sadistically to cause harm…" *Id.* Minor injuries can support Eighth Amendment claims "as long as the amount of force used is not de minimis." *Thompson v. Booth,* 16-CV-3477, 2021 WL 918708, 2021 U.S. Dist. LEXIS 45136, *13 (S.D.N.Y. Mar. 10, 2021) (citing *Sims v. Artuz,* 230 F.3d 14, 21 (2d Cir. 2000)) (quoting *United States v. Walsh,* 194 F.3d 37, 50 (2d Cir. 1999)). Whether the wrongdoing was harmful enough to establish a constitutional violation is judged in light of "contemporary standards of decency" and, where prison officials use force to cause harm maliciously or sadistically, "contemporary standards of decency always are violated…whether or not significant injury is present." *Wright,* 554 F.3d at 268-69 (quoting *Hudson v. McMillian,* 503 U.S. 1, 9 (1992)).

Defendant's injury argument, then, must be that, as Plaintiff did not suffer an injury, de minimis force or no force was likely used, negating his version of events, and entitling

Defendant to summary judgment on Plaintiff's Eighth Amendment claim. *See* Def. Br., 4.

Defendant bases his claim that Plaintiff did not suffer an injury on the medical report taken shortly after the incident. Defendant's argument is that its failure to note any new injuries on Plaintiff negates Plaintiff's claims of injuries, and with no injury, the force used could not have been what Plaintiff describes and must have been either nonexistent or de minimis.

On summary judgment, the Court must view the record in the light most favorable to the party against whom summary judgment is sought. *In re Novartis Wage and Hour Litig.,* 611 F.3d 141, 150 (2d Cir. 2010). Here, Plaintiff has alleged he sustained three injuries: hitting his head on the desk and floor, cutting his finger, and the displacement of a surgery staple in his stomach. Pl. Am. Compl., 3. The medical report notes he had no lump on the back of his head. The report does not comment on whether a cut was found on his finger, though it does note old foreign bodies were found in his fingers, suggesting that his complained-of finger was examined. The report makes no mention of the staples in Plaintiff's stomach. *See* Medical Rep. It also makes no mention of Plaintiff complaining about a displaced staple, though pictures taken after the incident appear to show Plaintiff displaying the staples on his stomach for the camera. White Aff., Ex. G, ECF No. 96. It is difficult to tell, because of the quality of the photos, whether any staples are displaced.

Importantly, though Defendant does not note it in his brief, there is a section on the medical report asking the question, "Are the injuries observed consistent with the inmate's description?" The nurse practitioner put an "X" next to the "Yes" box. *See* Med Rep.

For a medical report to defeat a plaintiff's claims on summary judgment on an excessive force claim it must "*directly and irrefutably* contradict [the] plaintiff's description of his injuries" such that "no reasonable jury could credit plaintiff's account of the happening." *See*

*Henry v. Brown,* 406 F. Supp. 3d 211, 214 (E.D.N.Y. 2016) (citing *Davis v. Klein,* 11-CV-4868, 2013 WL 5780475, 2013 U.S. Dist. LEXIS 153469, *4 (E.D.N.Y. Oct. 25, 2013)).  The report does not do so here.  While the failure of the medical report to specifically note any of Plaintiff's claimed injuries may be strong evidence of the credibility of Defendant's story, the report as a whole does not show Plaintiff's story to be "contradictory and incomplete" such that it cannot be credited at all by the Court. *Jeffreys.* 426 F.3d at 554.  The nurse practitioner's indication that Plaintiff's injuries were consistent with his description of the incident is evidence in favor of Plaintiff's story.  And, if the Court grants all permissible factual inferences to Plaintiff as it must here, the lack of notation of injuries could be explained: the absence of a lump where Plaintiff claims to have slammed his head could have been because not enough time had passed for it to develop, and the lack of comment on a cut to his finger and a staple being dislodged could have been oversights as opposed to proof they did not exist.  Given that the Nurse Practitioner noted that Plaintiff's injuries were consistent with his story, which she wrote was, "he was slammed by an officer and injured his [right] hand, lower back, [and] back of head," it is a reasonable inference that she must have seen something that caused her to make that determination. Med. Rep.

The situation is similar to that in *Randolph v. Griffin*, where the Second Circuit held that the District Court erred both in discrediting the Plaintiff's testimony in an excessive force case because of a lack of corroborating evidence and in crediting Defendants' account of the assault over Plaintiff's where Plaintiff "relied exclusively" on his own testimony. *See Randolph v. Griffin,* 816 Fed. Appx. 520, 523 (2d Cir. 2020).  The Second Circuit noted that, "Under this Court's precedent, even when a plaintiff has relied exclusively on his own testimony, courts have denied summary judgment to defendants as long as the plaintiff's 'testimony was not

contradictory or rife with inconsistencies such that it was facially implausible.'" *Id.* (quoting *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 726 (2d Cir. 2010)). In finding Plaintiff's sworn statement standing alone was enough to defeat summary judgment in *Randolph,* the Second Circuit noted, Plaintiff "consistently maintained that several defendants repeatedly assaulted him without provocation while he was handcuffed," that the description included "more than conclusory allegations…[it was] specific and detailed" and was "made under penalty of perjury," and that the statement was "not so 'contradictory or rife with inconsistencies,' even though it contain[ed] some, 'that [was] facially implausible.'" *Id.* (quoting in part *Fincher,* 604 F.3d at 725-26) (quoting in part *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003)).

Similarly, here, Plaintiff swore under penalty of perjury that his description of the incident was true. *See* Pl. Am. Compl., 7. He maintained that he was assaulted in his description of the incident to the Nurse Practitioner (Med. Rep., ECF No. 98-4 ("[Inmate] claims he was slammed by an officer and injured his [right] hand, lower back, and back of head")), in the grievance form he submitted (Griev. Form, ECF No. 98-6 ("…At approximately 9:49 P.M. [while] handcuffed and still hav[ing] at least 40 something staples the transportation [officer] assaulted me by slamming me on my back causing injuries in Medical…"), and in his statement for his disciplinary hearing (White Aff., Ex. D, ECF No. 96 ("The only time I was disorderly was when I was yelling that they were assaulting me.")). While there are some inconsistencies (for instance, Plaintiff does not appear to have mentioned injuries from his staples being dislodged to the Nurse Practitioner, the time of the incident varies by about an hour in his various recollections, and he does not mention being slammed in his disciplinary hearing statement), Plaintiff's statements are overall consistent, and his complaint and narrative are more than conclusory, they are detailed containing specifics about date, time, location, and the things said

and done by both parties. As a result, as instructed in *Randolph*, this Court cannot accept Defendant's version of events as true and discredit Plaintiff's at this stage, even if it finds Defendant's story more credible or plausible.

And, once we assume Plaintiff's version of events, the force used was not de minimis. Body slamming a restrained prisoner is not a "nontrivial" use of force, such that it could be considered de minimis. *See Wilkins,* 559 U.S. at 39. Applying the wantonness factors to Plaintiff's version of events and construing all ambiguities in his favor: there was little need for an application of any force given that Plaintiff claims he was handcuffed and his legs were shackled; the amount of force used in response to Plaintiff protesting an order to head to the "medical pens" was clearly disproportional if, as Plaintiff claims, he was body slammed into a vacant office; the injuries Plaintiff alleges were inflicted were not severe but were certainly injuries, and Plaintiff had just undergone surgery, making him more prone to injury.

Defendant also argues any force that was used would have been used in a good faith effort to maintain order, and not maliciously or sadistically to cause harm. And, if the jury credits Defendant's story, Defendant would be justified in his actions. In his telling of the story, the only force used was the placement of his hand on Plaintiff's elbow twice to direct him. It was Plaintiff pulling away that caused the accidental fall which caused any injuries Plaintiff may have sustained. The only reason Defendant was placing his hand on Plaintiff's arm to direct him was because Plaintiff had refused an order to head to the "medical pens" and was being disruptive within the medical ward. The described use of "force," which certainly would qualify as de minimis and insufficient to sustain an excessive force claim, was also certainly for the purpose of maintaining order and would have been proportional to the refusal to obey the order by the Plaintiff.

However, if the jury credits Plaintiff's version of events, as I have recommended the Court find a reasonable jury could at this stage, the force could only have been for the purpose of causing harm.

According to Plaintiff, he was recovering from two surgeries and he was shackled and handcuffed when the incident occurred.  It violates contemporary standards of decency to attack an already restrained prisoner without cause.  Additionally, it is unclear how body slamming an already restrained prisoner could be construed as a good faith effort to restore order.  If Plaintiff was being disruptive in the ward, and Defendant sought to end it, surely body slamming Plaintiff would cause more disruption, not less.

It should be noted Defendant did present a sworn affidavit from a witness, Mr. Licht, another corrections officer, which entirely vindicates his side of the story.  Meanwhile, Plaintiff presented no witness to support his.  But Plaintiff's own testimony is evidence that may be relied upon and may prevent summary judgment where it "offers a plausible alternate version of events to [Defendant's]" and is not "contradictory and incomplete." *Bridgewater v. Taylor,* 832 F. Supp. 2d 337, 345 (S.D.N.Y. 2011); *see also Fincher v. Depository Trust & Clearing Corp.,* 604 F.3d 712, 726 (2d Cir. 2010).  Whether his story is *credible*, particularly in light of Defendant's sworn affidavit, Mr. Licht's affidavit, and the medical report, is another question, but it a question for the jury, not a question for the Court on summary judgment. *See Jeffreys,* 426 F.3d at 551 ("District courts may not weigh evidence or assess the credibility of witnesses at the summary judgment stage.").  As such, Defendant's argument fails to entitle him to summary judgment.

### b.    Defendant's New York State Law Argument

Defendant also argues the use of force was justified under New York State law, which says, "The use of physical force upon another person which would otherwise constitute an

13

offense is justifiable and not criminal under any of the following circumstances…A warden or other authorized official of a jail, prison or correction institution may, in order to maintain order and discipline, use such physical force as is authorized by the correction law." N.Y. Penal Law §35.10(2).  First, this provision applies to criminal actions, not civil ones like that before the Court here. *See Taylor v. Wilde,* 11-CV-3608, 2012 WL 2860999, 2012 U.S. Dist. LEXIS 96147, *9 (E.D.N.Y. July 10, 2012).  And even if it did apply, nowhere in Defendant's brief does he point to where, in New York law, it would allow Defendant to slam a shackled prisoner into a vacant office, even if he was refusing a direct order.

More fundamentally, New York law cannot make legal that which the U.S. Constitution forbids. U.S. Const. Art. VI, Cl. 2.  Given that, if a jury found Plaintiff's story more credible, Defendant's actions could constitute excessive force under the Eighth Amendment, justification based on state law, even if well supported, would not entitle Defendant to summary judgment.

## II.    Summary Judgment May Not Be Granted Based on An Alleged Failure by Plaintiff to Exhaust His Administrative Remedies

Defendant next argues that he is entitled to summary judgment because Plaintiff failed to exhaust his administrative remedies prior to filing this suit as required by the Prison Litigation Reform Act. *See* Def Br., 6.  Specifically, Defendant argues that, because Plaintiff signed and agreed to the Grievance Coordinator's decision in response to his grievance and did not appeal it, he failed to exhaust his administrative remedies. *Id.*

The Prison Litigation Reform Act mandates, "No action shall be brought with respect to prison conditions under [42 U.S.C. §1983], or any other federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  The Supreme Court has held that this exhaustion requirement is "mandatory" wherever administrative remedies are "available." *Ross v. Blake,*

578 U.S. 632 (2016).  A remedy is available where the procedure is "capable of use" to obtain "some relief for the action complained of." *Id.* at 642 (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001).  An administrative procedure is unavailable where it operates as a simple dead end, is so opaque as to be practically incapable of use, or where prison administrators thwart inmates' attempts to take advantage of it. *Id.* at 643-44.  "Because failure to exhaust [administrative remedies] is an affirmative defense, [the] defendant[] bears the initial burden of establishing, by pointing to legally sufficient sources such as statutes, regulations, or grievance procedures, that a grievance process exists and applies to the underlying dispute." *Hubbs v. Suffolk Cnty. Sheriff's Dep't,* 788 F.3d 54, 59 (2d Cir. 2015).  "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Hayes v. Dahlke,* 976 F.3d 259, 268 (2d Cir. 2020) (quoting *James v. Bock,* 549 U.S. 199 (2007)).

Nassau County Correctional Center must provide grievance procedures that, at minimum, meet those required by the State. NYCCR tit. 9 § 7032.1-.12.  The State requires an inmate to file a grievance within five days of the act or occurrence and provides an inmate two days after receipt of the grievance coordinator's determination to appeal to the chief administrative officer. *Id.* at § 7032.4(d)-(j).  The Nassau County Correctional facility's rules and regulations for grievance procedures provide, "Within (2) two business days after receipt of the Grievance Coordinator's written findings, [an inmate] may appeal a negative finding to the Chief Administrative Officer." Inmate Handbook, 4, ECF No. 98-5.

Though Plaintiff filed his grievance within the required five days, he did not appeal the grievance coordinator's decision to refer the complaint to Internal Affairs within 2 days, and Defendant argues this bars Plaintiff from bringing this action.  Plaintiff meanwhile claims, "The grievance was answered by the jail, then referred to Internal Affairs, who took a report…Once

the grievance was referred to Internal Affairs, I was not made aware of the decision." Pl. Am. Compl., 4.

As the Second Circuit and Supreme Court have held, the scope of remedies available to an inmate are defined by the facility's rules themselves. *Hayes*, 976 F.3d at 268; *see also James* 549 U.S. at 218. The NCCC's rules provide for an appeals process for a "*negative* determination*," and it is clear Plaintiff did not file an appeal of the grievance. Therefore, the question is whether Plaintiff was given a negative determination on his grievance, such that he had an available remedy of appeal.

The record shows that Plaintiff was not given a negative determination by the Grievance Coordinator reviewing his case. On the grievance form, there is a section labeled, "Decision of the Grievance Coordinator" with boxes for "Grievance Accepted," "Grievance Denied," and "Non-Grievable Issue." Grievance Form, ECF No. 98-6. None of those boxes were checked by the Grievance Coordinator. Instead, stamped over that section, is text which says "Sent to Internal Affairs" with the Grievance Coordinator's signature under it. Underneath that is where Plaintiff allegedly signed affirming that he had "read and accept[ed] the Grievance Coordinator's decision." *Id.*

A negative decision, such that it would be appealable under the NCCC's rules would have been a denial of grievance, and there was box to indicate such a determination which was not checked on the grievance form. Instead, the Grievance Coordinator appears to not have made a determination, deciding instead to refer the grievance to a different body, Internal Affairs. Because a referral is not a *"negative determination," the NCCC's rules did not provide a remedy of appeal for a referral decision. Thus, the appeals process was not "capable of use" to Plaintiff to obtain "some relief for the action complained of." *See Ross* 578 U.S. at 642.

16

Defendant makes no argument that Plaintiff failed to exhaust his administrative remedies regarding Internal Affairs' determination, and Plaintiff himself claims he was never advised of any determination by them.  As such, Plaintiff had no available remedy beyond the initial filing of the grievance, which Defendant admits he did timely.  Thus, Plaintiff did exhaust his administrative remedies, and Defendant cannot be granted summary judgment on this basis.

### III.    A Reasonable Jury Could Find Plaintiff Suffered Physical Injury Sufficient to Claim Mental or Emotional Injury Under the PLRA

Defendant next argues that because Plaintiff has no physical injury, he cannot claim mental or emotional injury under the PLRA.

The PLRA says, "No Federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." 42 U.S.C. §1997e(e).  Plaintiff does ask for "Compensatory, punitive, and/or nominal damages for the pain and suffering, as well as the mental anguish [he] suffered at the hands of the defendant[]." Pl. Am. Compl., 5.

At the outset, it should be noted that even if Plaintiff had not established physical injury, it would not do away with all his claims.  The Second Circuit has held that "Section 1997e(e) does not deprive prisoners of adequate methods for contesting constitutional wrongs…[it] does not limit the availability of nominal damages for the violation of a constitutional right or of punitive damages." *Thompson v. Carter,* 284 F.3d 411, 417-18 (2d Cir. 2002).  As a result, "compensatory damages for actual injury, nominal, and punitive damages [would] remain available." *Id.* at 419.

Additionally, as has been detailed above in Section I, I recommend the Court find that a reasonable jury could find Plaintiff suffered actual injuries if it finds him more credible than

17

Defendant and Defendant's witness.  The physical injuries Plaintiff alleges include slamming the back of his head on a desk and the floor "real[ly] hard," a surgery staple popping from the force of the altercation, and a cut to his finger.

*De minimis* injuries do not constitute actual physical injuries under Section 1997e(e). *See Liner v. Goord*, 196 F.3d 132, 135-36 (2d Cir. 1999).  Courts in this Circuit have found skin rashes, itching, soreness, and cracked skin, and even punching that results superficial and temporary irritations or abrasions do not constitute physical injuries under the PLRA. *Hon v. Liburd,* 18-CV-7201, 2020 U.S. Dist. LEXIS 139145, *30 (S.D.N.Y. Aug. 3, 2020) (collecting cases).  However, at minimum, the alleged injuries to Plaintiff's stomach and finger were more than superficial, he alleges that they drew blood. Pl. Nar., 3.

Therefore, a reasonable jury could find Plaintiff's injuries were physical injuries as defined by the PLRA, and summary judgment cannot be granted on Plaintiff's mental or emotional injury claims.

### IV.   Defendant is Not Entitled to Qualified Immunity at the Summary Judgment Stage

Defendant's final argument is that, even if he is not entitled to summary judgment on the underlying claims, he is entitled to summary judgment under a theory of qualified immunity.

When evaluating a claim of qualified immunity at the summary judgment stage, the Court must analyze: "(1) whether the evidence viewed in the light most favorable to the plaintiff, makes out a violation of a statutory or constitutional right, and (2) whether that right was clearly established at the time of the alleged violation." *Tracy v. Freshwater,* 623 F.3d 90, 96 (2d Cir. 2010).  "Government actors are shielded from liability for civil damages if their actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Tolan v. Cotton,* 572 U.S. 650 (2014) (internal quotation marks omitted) (citing

18

*Hope v. Pelzer,* 576 U.S. 730 (2002)). "[T]he salient question…is whether the state of the law at the time of an incident provided fair warning to the defendants that their alleged [conduct] was unconstitutional." *Id.*

As stipulated above, there is a genuine dispute as to which events took place. On a motion for summary judgment, I must presume the facts as Plaintiff alleges them for the purposes of the below qualified immunity inquiry. As discussed at length in Part I, if events occurred as Plaintiff alleges, I do believe his Eighth Amendment rights were violated, as he would have been subjected to nontrivial force inflicted only to cause pain.

Given that determination, the only question remaining is whether Plaintiff's right to be free from such excessive force was clear at the time of the incident. The right of an inmate to be free from excessive force was clearly established, but the inquiry required to assess a claim of qualified immunity is not so general. *Finnegan v. Fountain,* 915 F.2d 817, 823 (2d Cir. 1990). Instead, a Court must undertake an inquiry particularized to the facts of the situation at hand to understand whether "[t]he contours of the right [were] sufficiently clear [such] that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640 (1987). That finding does not require the very situation at hand to have been ruled upon by a controlling court, but "in light of pre-existing law the unlawfulness must have been apparent." *Id.*

Defendant only argues he is entitled to qualified immunity because it is undisputed Plaintiff was disobeying orders, disturbing the Medical Unit, and holding onto the wall to prevent himself from being moved out of the Medical Unit, and therefore he acted reasonably in response. *See* Def. Br., 9. Because qualified immunity is an affirmative defense, Defendant bears the burden of proof. *Jackler v. Byrne*, 658 F.3d 225, 242 (2d Cir. 2011).

Even if the Court accepts Defendant's argument that it was at least not clearly established whether some force was allowed in this type of situation, nowhere does Defendant discuss whether it was reasonable for him to believe the *level* of force used did not violate Plaintiff's rights. Accepting Plaintiff's story as true, Defendant would have to show that it was not clearly established at the time that slamming a fully restrained prisoner who had just undergone surgery against a desk and floor in response to insubordination was excessive force. Defendant has not done so, merely arguing in conclusory fashion, "Officer Wilde believed he was acting reasonably when a violent inmate began disobeying orders, refusing to relocate accordingly and it was reasonable to believe that his actions in no way violated Plaintiff's rights." Def Br., 9. Defendant does not support his contention that Plaintiff was "violent" nor point to any case law that would show the contours of unlawful action in these circumstances were ambiguous such that it would be reasonable for a Defendant to believe the acts Plaintiff alleges would be lawful here. Given that a reasonable jury could credit Plaintiff's version of events, Defendant therefore has not met his burden for summary judgment based upon a theory of qualified immunity.

Additionally, I note there is some relevant case law to show it was clear at the time this alleged level of force in response was unlawful. The incident at issue happened July 2, 2010. *See* Injury to Inmate Form, ECF No. 98-4. The Southern District of New York held in 2006 that the act of vehemently and repeatedly slamming an inmate against a wall was objectively excessive. *Charlton v. New York*, No. 03-CV-8986, 2006 U.S. Dist. LEXIS 98180 at *18, 2006 WL 406315 at *7-8 (S.D.N.Y. Feb. 22, 2006). In 1994, this Court held that the "unprovoked slapping of a handcuffed prisoner while [in] custody in a police car [was] an example of an amount of force which is excessive as a matter of law." *Messina v. Mazzeo,* 854 F. Supp. 116, 129 (E.D.N.Y. 1994). Given Defendant's burden, these similar precedential cases, and Defendant's lack of

support for his contention when one assumes Plaintiff's version of the story as true, I do not recommend the Court grant summary judgment on Defendant's excessive force claim.

## CONCLUSION

For the reasons discussed above, I recommend the Defendant's motion for summary judgment be denied.

## OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections.  Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *Tavarez v. Berryhill*, No. 15-CV-5141 (CS) (LMS), 2019 WL 1965832, at *30 (S.D.N.Y. May 1, 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**


_____/s/_____
Steven L. Tiscione
United States Magistrate Judge
Eastern District of New York


Dated: Central Islip, New York
       June 8, 2022